that welcome. Let's go ahead and call the case which is 22-3132 and across the pill 22-3142 Donahue versus UPS. As I said on mute, welcome Council. I'm glad that we were finally able to get together I think from November maybe it was September but we made it to the oral argument finish line. We have 15 minutes per side so Council for Mr. Donahue you may proceed. May please score. And can I reserve about three minutes? Sure, reserve as much as you want. Okay. Discovery abuse is far too common in these cases. Donahue requested multiple documents, multiple witnesses. UPS produced a number of documents, disclosed nine witnesses, said that it produced everything. We had no reason to file a motion to compile. A little less than a month from trial, documents were produced by UPS which were a number of emails. We went ahead, we went to trial. The judge had sanctioned, I call it a meaningless sanction because the judge said that UPS couldn't use the documents or information affirmatively but they could testify about them. And so then on the third day of trial I believe it was, second, yeah I think it was the third day of trial, a gentleman named Larry Berger got up to testify and we've been asking about a grievance that he had filed and to get a copy of it. We've been asking for that for several years. Could we roll back a little bit before? To that point, did you object to going forward with the trial or ask for continuance for additional discovery? What sort of remedy did you ask the district court for to remedy the late discovery? We did not ask for continuance or to not go forward with trial. It had been several times and so at that point, no, we did not ask for continuance. So what was Judge Krause to do? What did Judge Krause, why was he in error to say that I'm not going to give you a continuance, you didn't want a continuance, he said you can't use them. And I believe on May 27th on pages 38 and 39, you complained about the fairness of the sanction saying that you want the defendant to have to give an explanation. But now you're not asking us to require Ms. Jackson to give an explanation. You're saying 10th Circuit, you need to give us a new trial. Well, you didn't ask Judge Krause to postpone the trial. How did you preserve an argument that we should conclude that Judge Krause abused his discretion by giving a sanction, which was really the only sanction that you wanted other than you wanted the defendant to have to give an explanation? It was, we went to trial and during trial, so after we'd already been through the issue and agreed to go to trial, Larry Berger testified. Could I just jump in? I know you want to get to Berger. Didn't the district court give Mr. Donahue the option to postpone the trial? At the motion and lemony conference, we did discuss continuing the trial. And I believe if plaintiff would have asked for it, the judge would have, I believe he would have continued it. Thank you. All right. So it wasn't until we got into trial that Mr. Berger got up on the witness stand and we'd been asking about this grievance, which is critical, pretty critical to the case because it's the, it's the only document that was in existence that was produced at some, at some point, I said during trial, but prior to trial, no grievance was produced. The termination documents, those weren't able to be found. So those weren't produced. We found out on the last day of trial that UPS didn't produce its entire ADA, Americans with Disabilities Act policy, but the grievance, this is, it discussed what occurred on June 28th when Mr. Donahue suffered his injury and was, terminated or disqualified, whatever the, whatever UPS wants to call it. And so at that point, we were already, we were already in trial. So when Mr. Berger produces the grievance, you know, gets on the witness stand, produces the grievance, you expressed displeasure about that. Did you or your co-counsel ask Judge Krauss to grant a new trial or to grant any other sanction that he had not already imposed? No. However, throughout the transcript, co-counsel and I were making objections about discovery issues and the judge wouldn't take them up. Well, did you ever say anything or write anything to say, in light of these discovery abuses, you want Judge Krauss to grant a new trial? Judge Krauss said, you know, we've, we've covered the same ground a hundred times, you know, you've made your objection. Did you ever say anything or write anything or complaining that Judge Krauss should have granted a new trial in light of these discovery abuses? No, Your Honor. We did not say or write anywhere about a new trial. Okay. Thank you. So does that really leave us then with your primary vehicle for a new trial would be effectively a due process type argument that the trial was infected with so much air that it denied your client his due process rights? Yes. Which I think would still be based on discovery as well as it could bring in the time limits as well that the judge. Did you, in district court, including your motion for the trial, did you make a due process argument? We did not say the term due process. Did you say anything about, you know, that would have implicitly alerted Judge Krauss to the substance of a due process argument saying this, you know, this violates the constitution, you know, or something that we can interpret as, as in effect a due process argument. I, I believe that we said that it was unfair. And I think we may have also discussed manifest injustice. The other is that before we really had an opportunity to object, the judge inserted his own objection and said, hey, look, if you want to take this, or he said, hey, look, take the, take it up with my friends in Denver. And he says, I realized it's not, you know, it's not fair, but it's also not unfair. And so he had, he had already, in our opinion, had inserted his opinion and told us, you know, we thought then, you know, take it and ask the 10th circuit. One of the things I haven't talked about is when, when the last day we were left with 20 minutes to question a witness and that witness changed testimony that had been given through trial. This is Mr. Day. So as I understand your argument, near the end of his direct examination, you were surprised because Mr. Day reversed himself, but he reversed himself according to your reply brief in your favor. You had been arguing that Mr. Donahue had been terminated. I think you had argued throughout your briefing that UPS had taken the position that no, he had not been terminated. And then Mr. Day, lo and behold, says near the end of his direct that he had been terminated. Well, why typically, you know, I'm thinking back to my days in private practice in a trial, if the opposing party gives you a great admission on direct examination, I think many good cross-examiners would say, the last thing in the world I'm going to do is give Mr. Day an opportunity to clean that up. I'm going to get a transcript of that one exchange and blow it up and be talking about that in closing argument. What is it that you wanted to ask Mr. Day that he hadn't already told the jury in your favor? Well, he testified and said that UPS had not opposed or controverted Mr. Donahue's claim for workers' compensation. And that's not true. And we, in fact, it was a document, answer to the claim for compensation. And, you know, it was, it was attached to the motion of limine. Do you have, do you have any evidence or did you present any evidence or just as a factual matter, did Mr. Day ever see that document? I don't know. We didn't get an opportunity. Okay. So if you had used that to cross-examine the defendant, why would Judge Krause have let you cross-examine the witness with a document without at least a foundation that he had ever seen that document? Well, if he had given you more than 20 minutes and you said, okay, well, I want to use this document that Mr. Day has never seen to cross-examine him about it, wouldn't the natural response be, well, if he had never seen it, of course you can't use that document to cross-examine a witness. Well, the problem is we don't know, but somehow he was able to testify and say that the work comp claim hadn't been opposed. And he was pointing to a document that had been produced by UPS, that UPS introduced and said that. And then when I got that 20 minutes, significant amount of it went for objections. And when we were discussing the time limits the night before, my co-counsel had even asked the judge, well, what happens about objections? Because we've had some pretty lengthy objections. And he said, we'll deal with it when we get there. And so we had these multiple times, we had these objections. I went back to the podium and I looked and I said, judge, I mean, I feel as an officer of the court, the clock says I'm done. I got to say I'm done. I said, judge, my time has run out. Could I ask two or three more questions? And he says, no, you can have one. Because I had one, I asked one question, but I couldn't ask the second question to attempt to insert the answer to the claim for compensation to show that UPS had in fact opposed his work comp claim. Because what that set up is the argument to make it sound like UPS did everything they were supposed to. But the transcripts replete with examples of witnesses that controvert each other within depositions, within trial testimony and so on. And I understand that part of that is impeachment. But when witnesses are originally saying that they terminate and they disqualified somebody on June 28 and everybody says that they have the authority to do it, you prepare for trial, you come into trial and they say, well, sorry, they didn't have the authority to do it. And then, oh, by the way, disqualification doesn't mean termination. And then we look in and I think it was maybe Exhibit 319, I'm sorry, 313. And Kelly Cisse had sent an email on October 8 saying about William Donahue, he is off the street. So if I DQ him officially, now he would be terminated. And so we're chasing our tails, wasting time based upon the whole disqualification termination. And like we argued in the brief, we think there's significant problems, the fact that they did that. Yeah, counsel, your time's expired. I'll give you a little bit of rebuttal. Let's hear from UPS, Ms. Jackson. Welcome. Good morning, your honors. Claudine Jackson for UPS. May it please the court. I think the last issue we were talking about was the second issue in Donahue's brief to the court and that's the amount of time that the court presented. And the way that Mr. McKee or Donahue has couched it in his brief is a due process argument. And the plaintiff, Donahue, did not object at trial to the timeframe that the court allowed for the presentation of the evidence or the closing argument under a due process theory. And as the court knows under 10th Circuit case law, he is required to make an explicit statement to the court that it's violating a due process right. If he doesn't, then he can, of course, urge plain error, that the legal error's plain, that it affected his substantial rights, and that it substantially affected the fairness, integrity, and reputation of the judicial system. And he hasn't done that. I mean, even if he's done that, your honor, in his brief, he hasn't put together, he hasn't articulated how that happened. And as the court has in its own local rules and in Federal Rule of Appellate Procedure 8A or AHA, an applicant, an appellant is required to articulate what the argument is, point to the record, and provide the court with a legal authority to support that argument. And he simply hasn't done that in terms of his argument that he didn't have enough time to present his case or his closing argument to the jury. Mr. Jackson, on, in his opening brief, you know, on this issue, starting on page 20, I don't, you know, he does refer to due process in his heading. The last day of due process, but in the body of his brief, and I could be mistaken, it seems to me that he is really focusing, including in his, in his opening paragraph, and really throughout, as an abusive process, as a mismanagement of the trial and an improper administration of Federal Rule of Appellate Procedure 102. And both you and he objected to the time limits. And so, as far as an application of Rule 102, do you acknowledge that at least he preserved that part of his argument? Yes, Your Honor, although, well, I don't, I don't acknowledge that he preserved that at trial, Your Honor. I do recognize that although he couched his argument as due process, I did, in our response, address the due process. And I'll touch on why I don't think the court abused its, pardon me, why, I'll touch on the abuse of discretion and why the trial court did not abuse its discretion. The trial court didn't act arbitrarily because it did set in numerous places in the record, the factors that it considered and why it implemented then time restrictions. First of all, before trial ever began at the pretrial conference, both parties represented that the case could be presented to the jury within four days. And I think that was even in the pretrial order that was presented to the trial court. The trial court discussed that, and the trial court stated that he, the trial judge was not going to manage each party's time unless it became, unless it became necessary and that he felt that the parties should be able to manage the time. At numerous points in time during the trial, the court expressed concern about the time that the case was taking. So on the second to the last day of trial, Your Honor, the judge went through factors of why he was imposing now a time limitation. He talked about when the time remaining for the case to be presented to the jury. He talked about the pace of the trial. He even referenced that Mr. McKee had made a representation to the court that he needed only 45 more minutes to wrap up the direct examination of the plaintiff, yet had already used more than twice that amount of time. We were still on, he was still on the direct examination of the plaintiff at that point in time. UPS had not even had a chance to cross the plaintiff at that point in time. UPS had not had a chance to call the majority of its witnesses. And the judge took into account that based on the representations that I made to the court, which Donahue did not object to, that UPS had already used 598 minutes. Pardon me, Donahue had already used 598 minutes and UPS had only used 207. Well, can I quiz you about that, Ms. Jackson? You repeated those statistics to us. And if I was Mr. McKee, which I'm not, I don't know why in the world I would have to say I object, not to what you're doing, Judge Krause, but I object to that statement. And if I don't object to something that Ms. Jackson has said, a factual representation, then I am going to forego my opportunity when she repeats the same factual information to us with nothing in the record to support it. That I have now waived an opportunity to say that her statistics are incorrect. You said it to Judge Krause, you said it to us, but the statements in a brief are not evidence. We have a number of cases that say that. And it seems to me that you are asking us to rely on a factual representation without any support. And the problem is Mr. McKee is not complaining, I don't think, to us about a time limit. He's saying it was an unequal time limit. You gave the UPS four hours and you gave me an hour and a half. What if Judge Krause had given him 10 minutes and you seven hours and 30 minutes? Would that have been a fair application of Rule 102? Well, I think, Your Honor, the way the appellate court is to look at it is whether or not the trial court abuses discretion. And I think if the trial court were to set forth factors as to why that 10 minutes made sense, then I don't necessarily agree it would have been an abuse of discretion. But the fact of the matter remains that Donahue did not object to the time limits and then did not proffer any evidence to show what he would have done with that additional time. And I have cited, and in fact, even Donahue has cited, many cases in which we have seen the trial courts in controlling their courtroom, which they have a right to do within their discretion, in which they have shortened time periods of trial or limited the amount of cross-examination or time given. And what the Tenth Circuit has said is unless the person who's objecting to that proffers some evidence to show what they would have done to show that there's some sort of manifest injustice in limiting the time, then they've waived that argument. And I think that's what happened here. And the court actually did not necessarily agree with the times I represented to the court. What the court said is, you know, based on what I've seen go on, that's an accurate, and this was not the judge's exact words, but essentially like an accurate representation. I would also state that Donahue relies on the Maloney case in which the court talks about, you know, a trial lawyer has an obligation to control its own time that it uses in the courtroom. And throughout the record, you can see that there's multiple times in which Donahue was violating the motion in Lemony, was asking questions that were asked and answered, didn't know how to refresh a witness's memory, and all that ate into time that was allotted during this four-day trial. Should I just ask you to clarify your position? You've argued that the due process argument has waived, forfeited, but waived because of lack of a plain error argument. Are you saying, and you've made the argument about abuse of discretion, but is abuse of discretion a preserved appellate issue or not? I don't believe it is because I don't believe that Donahue objected to have preserved that error here at the appellate court. Could you respond to counsel's argument based on the testimony of Mr. Day? Of Mr. Day? Yes. Yes, your honor. I think that was addressed in his rulings on, in terms of the timeframe, your honor, the time he was allotted. Again, your honor, under the rules and under the case law that's been presented, including cases that were presented by Donahue, if he's going to object to the timeframe in which he was allowed to cross-examine Mr. Day, he was obligated to object on the record and proffer what he would have asked, what exhibits he would have shown, and he didn't do that. In fact, even here today, your honor, he said he simply had two questions to ask and he was allowed to ask one and not the other. Well, all he had to do then, if he only needed to ask two questions, was all he had to do was proffer that second question to Judge Krause at the trial court level, and he didn't even do that. It also doesn't, I mean, going back to the whole plain error, it doesn't show how anything he would have presented through Mr. Day would have made any difference in the outcome of the trial. I'll touch just briefly on the pretrial discovery, unless the court has more questions about the timing, but again, Donahue did not preserve his error at trial. If the documents that were produced late were presented before trial, he could have made a motion for sanctions at that point in time. He didn't. He waited until the motion in Lemony or the pretrial hearing to bring it up after the pretrial hearing. He could have made an argument again. He didn't. When the court addressed what the sanction would be, Donahue said that they can't use the documents, that we get to redact the documents if we want to use them, and that they can't call the witnesses. UPS agreed, Your Honor, we're not going to call any of those witnesses. The court sanctioned UPS and told UPS we could not use the documents unless they were admitted by plaintiffs, and then the court rejected the idea because Donahue presented no case law, rejected the idea that you can just redact parts of a document that you're going to use without making any sort of presentation to the court of the authority that would allow that to happen, and then during trial, Your Honor, Donahue was the one who admitted those documents that they objected to the late production of it. UPS did not admit those. UPS did not try to call those witnesses. Donahue called those. I had thought that he was, you know, I think I may have read his briefing, his opening brief, a little differently than you. I didn't interpret his opening brief to say I am objecting based on these four documents. I think it was just using those documents to illustrate in his view the gravity of the misconduct of UPS. Well, that's a great point, Your Honor, because I don't think the record or his briefing is clear as to exactly what documents he's talking about, and we pointed that out in our briefing that you, the Tenth Circuit, you do not have the obligation to go through and try to figure out what part of the record he's talking about, what documents he's talking about. You can just decline to consider it, but if for some reason you believe that he's articulated what documents he's talking about, my point is he didn't make objections to those documents at trial. His third, the third complaint has to do with the jury instruction. I feel that this has been pretty well briefed. It talks about the time frame in which they had to object. I think it's laid out that the parties submitted joint instructions to the court. The court then considered it and returned instructions. The parties then had an opportunity to provide written objections, which they did, and Donahue did that timely with 13 pages of objections. The court then had a pre-jury instruction conference where it took into account oral arguments and objections. It reserved some of those for the conclusion of the evidence. The court then presented a revised and final copy of the jury instructions, and the court then conducted a hearing that allowed the parties to articulate objections that they already hadn't made in writing. Once again, Donahue did not preserve any error in the format. He did not say we need more time. He didn't attempt to file more objections with the court. I see my time's up. Didn't he raise some of those objections in his motion for new trial, and didn't the district judge discuss some of them from the standpoint of plain error? In his motion for new trial? Yes. Yes, your honor, and the judge found that there wasn't plain error. I think we addressed the four objections. I think he brought them up again in the brief that's before this court, and we addressed why those errors weren't preserved, that the court had followed the law on those instructions to the jury, and that the jury even had found in Donahue's favor on a couple of those. I'm raising the question because I'm not sure we see all that often district court itself applying plain error. That's usually something we talk about on appeal, and yet it happened with this motion for new trial. I'm interested in your addressing what implications that might have for the way we should review the issue now. I do not know if I have the best answer for the court on that, except to say that I think even if the court were to look at the plain error argument, I don't think that there's a plain legal error. I think that the instructions that were put forth in front of the jury were very appropriate. I don't believe there's any error there to even get to the analysis for the first element of the court taking a look at whether or not there's plain error. All right, counsel, thank you for your take on that interesting issue. Mr. McKee, you can have 90 seconds for rebuttal if you'd like. Thank you. As far as making a proffer, our time was up. We were told we were done, and I want to point out that the judge, he was irritated with us, me and my co-counsel, and he expressed that throughout trial, even with Mr. Day. I'd asked a question, the judge had objected. Judge told me I hadn't asked a question, I couldn't testify. And I'd asked a question, and this was right before, and then the judge tells us about that time. And during trial, the judge also apologized to my co-counsel for the way that he treated her. And as far as the objections go, there's numerous objections throughout the record about discovery, and there's numerous times when the judge says, I've heard it 100 times, I don't need to hear it again. And I say, I have to make a record. He says, it's there, don't worry about it. But since I only have 90 seconds and very little left, I also want to point out, we did put plain error under the standard above in the brief. And then with respect to the discovery issues that were going on, with the late documents, they were an example. But the grievance, it showed up in the middle of trial. And in our reply, Donahue lists out all of the objections that defense counsel made, including it hadn't been produced in discovery. Then an ADA document, which we caught Day in, and it wasn't their ADA policy. The other side objected saying that hadn't been produced in discovery. Termination documents were never produced. I'm not exactly sure what we were and how we were to object to what documents hadn't been produced, because we don't know. We've been assured everything had been produced. And so it seems like this would reward discovery malfeasance. It was right before trial. It was during trial. We asked multiple times and pointed to it. And the judge, he didn't want to hear it, said, you've made your record and that's enough. Over time, is there any final questions from Judge Bachrach or Judge Matheson? Any final questions? No, thank you. Counsel, thank you for your participation. You're excused. The case will be submitted and we'll see you at a future argument. Thank you.